UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – FLINT

In re:

    RICHFIELD EQUITIES, L.L.C., et al.           Case No. 12-33788-dof
                                                         Chapter 7 Proceeding
        Debtors.                                          Hon. Daniel S. Opperman
_____/

SAMUEL D. SWEET, Chapter 7 Trustee,

    Plaintiff/Counter-Defendant

v.                                                                                       Adv. Pro. No. 14-03156-dof

BLUE SKIES ENERGY, L.L.C.

    Defendant/Counter-Plaintiff

_____/

## OPINION GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED AFFIRMATIVE DEFENSES TO COMPLAINT AND COUNTER-COMPLAINT

### BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 1, 2004, Richfield Equities, LLC, the parent company of Richfield Landfill, Inc., entered into an Agreement with Blue Skies Energy, LLC ("Defendant") which granted the Defendant the exclusive rights to assess the economic viability of collecting and treating landfill gas at the Davidson Landfill and of marketing residue gas. Pursuant to that Agreement, if the Defendant determined that the project was viable, it would then receive a Landfill Gas Deed in exchange for its agreement to install a gas gathering system at its own expense. The Defendant elected to proceed with the project. On February 7, 2004, Defendant received a signed Landfill Gas Deed ("2004 Deed"). On February 23, 2004, the 2004 Deed was recorded with the Genesee County Register of Deeds.

1

Richfield Equities, LLC, did not own or hold title to, nor has it ever owned or held title to, Richfield Landfill. Richfield Landfill, Inc. currently, and at all relevant times, owned and held title to Richfield Landfill.

In March of 2006, Richfield Equities and the Defendant entered into a Subscription Agreement for Economic Interest in the Defendant. The Subscription Agreement provided, among other things, for the execution of a "curative deed . . . for the purpose of correcting the name of the grantor in the Landfill Gas Deed."

On February 18, 2011, Richfield Equities executed a "curative" Landfill Gas Deed ("2011 Deed") to the Defendant, stating, in pertinent part: "This Landfill Gas Deed is a corrective and curative deed which corrects a Landfill Gas Deed executed February 7, 2004 recorded at the Genesee County Register of Deeds on February 23, 2004 . . . . Due to a clerical error, the Original Deed incorrectly named an affiliate of Richfield Landfill, Inc. as Grantor." On February 25, 2011, the 2011 Deed was recorded with the Genesee County Register of Deeds.

On September 18, 2012, Richfield Equities and its three subsidiaries, including Richfield Landfill, filed for relief under Chapter 11. On February 25, 2013, the cases were converted from Chapter 11 to Chapter 7.

As part of the Chapter 7 proceedings, the Trustee filed a Motion for Entry of (I) a sale Procedures Order (A) Approving Bidding Procedures for the Sale of Assets, (B) Approving Bidding Protections, (C) Approving the Form and Manner of Notice of the Bidding Procedures hearing, the Auction, and the Sale Hearing, and (D) Scheduling an Auction and the Sale Hearing; and (II) a Sale Approval Order Authorizing the Sale of Assets Free and Clear of Liens, Claims, and Encumbrances. Through this Sale Motion, the Trustee sought to sell the Davidson Landfill to Green Harvest Landfill, LLC. The Defendant filed a limited objection to the Sale Motion,

seeking clarification that the sale of the Davison Landfill would not include the landfill gas rights owned by the Defendant. On May 7, 2013, a hearing was held to approve the bidding procedures in connection with the Sale Motion. At the hearing, Trustee's Counsel advised the Court that the proposed bidding procedures order to be submitted to the Court for entry contained certain changes from the original proposed bidding procedures order attached to the Sale Motion. The changes were intended to resolve the objections filed to the Sale Motion and included, among others, a new paragraph that read:

> Notwithstanding anything to the contrary in this order, the sale of the sale assets is subject to the rights of Blue Skies Energy, LLC who is the grantee with <u>warranty of title</u> to all of the gas rights in and all the landfill gas in and under and that may be produced at the Davison Landfill together with the rights of ingress, egress, building and operation of facilities regarding the gas on the subject property as more completely described in the land gas deed recorded in Genesee County Register of Deeds. This sale is subject to the rights granted pursuant to the landfill gas deed which rights shall not be affected under Section 363 of the Bankruptcy Code, or otherwise as a result of this sale.

Trustee's Counsel also stated: "The purpose for that change, Your Honor, was that Blue Skies Energy, LLC has a land gas deed such that the property which is what I'll refer to as the gas harvesting, is not an asset of the debtor's, it is an asset of Blue Skies Energy, LLC pursuant to the gas deed. So it's -- it's not something we're selling and this was a clarification point. And – and moreover to put potential bidders on notice that you're not acquiring the right to harvest the gas." The Bidding Procedures Order, as modified, was entered that same day.

The sale of the Davison Landfill to Green Harvest Landfill was never closed, and the Amended and Restated Asset Purchase Agreement between the parties was terminated by the Trustee, pursuant to a Notice filed with the Court dated July 11, 2013.

On September 18, 2014, the Trustee commenced this adversary proceeding against the Defendant alleging seven counts: (I) Avoidance of Original Deed and/or Determination of

Defendant's Interest in Real Property; (II) Avoidance of Second Deed as a Fraudulent Transfer; (III) Avoidance of Transfer of Landfill Gas as a Fraudulent Transfer under MCL 566.34; (IV) Avoidance of Transfer of Landfill Gas as a Fraudulent Transfer under 11 U.S.C. § 548; (V) Avoidance and Recovery of Transfer of Landfill Gas Harvested Post-Petition under 11 U.S.C. §§ 549, 550, and 551; (VI) Turnover and Accounting under 11 U.S.C. § 542; and (VII) Claim Disallowance under 11 U.S.C. § 502. On November 3, 2014, the Defendant filed its Answer to the Complaint and Affirmative Defenses.

On December 24, 2015, Defendant filed a Motion for Summary Judgment. The Defendant alleged that two issues were ripe for summary judgment, both of which would allow for the disposal of the Trustee's complaint in its entirety. The Defendant alleged that: (1) the documents attached to the Plaintiff's Complaint show that the 2011 Deed was executed solely to correct a clerical error in the 2004 Deed, and, by law, the 2011 Deed related back to the 2004 Deed, which therefore, places the time or the transfer of the landfill gas rights to the Defendant outside of the 2-year and 6-year statutes of limitation under 11 U.S.C. §§ 544 and 548; and (2) based on a clear position the Trustee took in addressing the Defendant's objection to the sale order – that the Defendant had warranty of title in the landfill gas rights – the Trustee is now barred, pursuant to the doctrine of judicial estoppel, from asserting that the Defendant's rights are now invalid and/or avoidable. On January 7, 2015, the Plaintiff filed his Response to Defendant's Motion for Summary Judgment. The Plaintiff alleged that: (1) Defendant's Motion should be denied because the 2011 Deed does not relate back to the 2004 Deed, and, accordingly, the Trustee's claims are not time barred under the applicable statutes of limitations; (2) Defendant's arguments regarding Reformation are not available, and even if it was an

available argument, it should be barred by the doctrine of laches; and (3) the Doctrine of Judicial Estoppel does not apply.

The Court held a hearing on Defendant's Motion for Summary Judgment on January 28, 2015. The Court took the matter under advisement. On February 4, 2015, the Court entered an Order Regarding Defendant's Motion for Summary Judgment, among other things, providing that Defendant could file "a motion for leave to amend its Answer and Affirmative Defenses to Complaint [Docket No. 5] to file a counterclaim on reformation of instrument raised in Defendant's Motion of Summary Judgment by no later than February 6, 2015."

On February 6, 2015, Defendant filed a Motion for Leave to File First Amended Affirmative Defenses to Complaint and Counter-Complaint. The attached proposed Amended Answer includes two new affirmative defenses and a declaratory judgment counterclaim. On February 20, 2105, Plaintiff filed an Objection to Defendant's Motion for Leave to Amend. The Plaintiff argues that (1) the Defendant has not met its burden under Fed. R. Bankr. P. 7016, which provides that a scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions"; (2) the Defendant has not met its burden under Fed. R. Bankr. P. 7015, which provides that a party may amend a pleading once as a matter of course within 21 days after serving it, and, "[i]n all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave"; (3) the Defendant asserted a declaratory judgment counterclaim when the Court only allowed for an amendment to add a reformation counterclaim; and (4) the amendment is barred by laches. The Defendant filed a Reply on March 9, 2015, in which it asserts that: (a) good cause exists under Rule 16(b)(4) to modify the scheduling order to permit it to file the counterclaim, and (b) the Plaintiff has failed to show any prejudice it would suffer if the Court were to allow the amendments and to show

5
14-03156-dof    Doc 80    Filed 05/12/15    Entered 05/12/15 11:06:33    Page 5 of 8

there was any lack of diligence on the part of the Defendant. The Court held a hearing on the Defendant's Motion for Leave to Amend on March 18, 2015, and took the matter under advisement.

## APPLICABLE LAW

### A. Fed. R. Civ. P. 16, made applicable by Fed. R. Bankr. P. 7016

Fed. R. Bankr. P. 7016 provides that a scheduling order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Pursuant to Fed. R. Bankr. P. 7016(b)(4), a deadline set by a scheduling order may only be modified for good cause shown and with the consent of the judge. The primary measure of the good cause standard is "the moving party's diligence in attempting to meet the cause management order's requirements." *Inge v. Rock Fin. Corp*, 281 F.3d 613, 625 (6th Cir. 2002). "Another important consideration for a ... court deciding whether . . . [the] 'good cause' standard is met is whether the opposing party will suffer prejudice by virtue of the amendment. *Leary v. Daeschner*, 349 F. 3d 888, 909 (6th Cir. 2003).

### B. Fed. R. Civ. P. 15, made applicable by Fed. R. Bankr. P. 7015

Fed. R. Civ. P. 15, made applicable to this proceeding by Fed. R. Bankr. P. 7015, provides that a party may amend its pleading once as a matter of course within 21 days after serving it, and, "[i]n all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

### C. Laches

"Laches is the negligent and unintentional failure to protect one's rights. A party asserting laches must show: (1) lack of diligence by the party against whom the defense is

asserted, and (2) prejudice to the other party asserting it." *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001) (quotation marks and citations omitted).

## DISCUSSION

All of the relevant arguments made by Plaintiff in his Objection to the Defendant's Motion for Leave to Amend require the Court to consider whether the Defendant was diligent in asserting its claim and whether there will be prejudice to the Plaintiff if the amendment is allowed.

The Plaintiff argues that the Defendant was fully aware of the purported reformation issue by at least December 24, 2014, the date the Defendant filed its Motion for Summary Judgment, and chose to allow the amendment deadline to expire without amending its Answer and Affirmative Defenses to assert a reformation counterclaim. The Plaintiff argues that the Defendant was aware of this issue as early as the Subscription Agreement of 2006. The Plaintiff additionally argues that he would be substantially prejudiced by the Defendant's counterclaim because he has already expended significant time, money, and resources in responding to the Defendant's Motion for Summary Judgment.

The Court finds that Defendant's Motion for Leave to Amend should be granted and that the scheduling order should be modified to allow for the Amended Affirmative Defenses and Counterclaim. Although not very clear, the Defendant alluded to the reformation argument in its initially filed affirmative defenses and made the argument clear in its Motion for Summary Judgment. Although the reformation argument was not clearly stated in the originally filed Affirmative Defenses, the Defendant acted diligently in asserting that argument as a potential claim in its Motion for Summary Judgment, the hearing on the Motion for Summary Judgment,

and by filing this Motion for Leave to Amend. The Defendant attempted to address this issue originally by filing the purported "curative 2011 Deed," but chose to also argue in its Motion for Summary Judgment that reformation is available.

Moreover, the Court finds that the Plaintiff has failed to establish that it will be prejudiced if the Defendant's Motion is granted. This case is not one involving an inordinate delay and the time, money, and resources expended by the Plaintiff in responding to the Defendant's Motion for Summary Judgment will not be lost. The substance of the Defendant's proposed counterclaim, the reformation defense, was the subject of the Defendant's Motion for Summary Judgment and the arguments made therein still stand.

For those reasons, the Plaintiff's laches argument must also fail.

Accordingly, the Court concludes that justice requires that the Defendant's Motion for Leave to Amend be granted. The Court notes that the Defendant is attempting to additional defenses that the Court had not contemplated when it issued its Order Allowing the Defendant to file its Motion for Leave to Amend, and had not been argued by counsel for the Defendant until the last moment. Accordingly, the Plaintiff will be permitted to respond to the amended affirmative defenses and counterclaim and will have the opportunity to move to strike them as not being supported by fact or law. Counsel for the Defendant is directed to prepare and submit an order consistent with this Opinion and consistent with the procedural rules of this Court.

**Signed on May 12, 2015**

                                               **_/s/ Daniel S. Opperman_**
                                               **Daniel S. Opperman**
                                               **United States Bankruptcy Judge**